# Permissibility of Recess Appointments of Directors of the Federal Housing Finance Board

Where the Senate has failed to act during a Session of Congress on the nomination of a person to an office, and that person is then serving in that office by recess appointment, the President may make a second recess appointment of that person to the position when the previous recess commission expires.

Although the payment of compensation to successive recess appointees is generally deemed prohibited by 5 U.S.C. § 5503(a), that prohibition does not apply to positions that are not paid out of appropriated funds.

December 13, 1991

MEMORANDUM OPINION FOR THE DEPUTY COUNSEL TO THE PRESIDENT

This responds to your memorandum of September 4, 1991, concerning the recess appointment of the directors of the Federal Housing Finance Board ("FHFB").[1] The President made recess appointments of four current directors of the FHFB during the last intersession recess of the Senate. You ask whether he may recess appoint these directors when their recess commissions expire at the end of the present session of the Senate.[2] You also ask whether these directors may receive their salaries if the President recess appoints them at that time. We believe that the President may recess appoint these directors when their present commissions expire and that they may receive their salaries if so appointed.

Congress established the FHFB in 1989 to "succeed to the authority of the Federal Home Loan Bank Board ("FHLBB") with respect to the Federal Home Loan Banks." Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, § 702(a), 103 Stat. 183, 413 (codified at *12 U.S.C.* § 1422a(a)(1)). The FHFB is managed by a

---

[1] Memorandum for Timothy E. Flanigan, Principal Deputy Assistant Attorney General, Office of Legal Counsel, from John P. Schmitz, Deputy Counsel to the President, *Re: Recess Appointment of FHFB Members* (Sept. 4, 1991).

[2] Congress adjourned on November 27, 1991, and will stand adjourned until 11:55 a.m. on January 3, 1992, unless sooner called to reassemble by the Speaker of the House of Representatives and the Majority Leader of the Senate. *See* H.R. Con. Res. 260, 102d Cong., 1st Sess., 137 Cong. Rec. H11,857, H11,873 (daily ed. Nov. 26, 1991). Unless Congress "by law appoint[s] a different day," *its next session will begin at noon on January 3, 1992.* U.S. Const. amend. XX, § 2. Consequently, it appears that the present session of the Senate will end at some time between 11.55 a.m. and noon on January 3, 1992.

Board of Directors comprising five members: the Secretary of Housing and Urban Development and four individuals appointed by the President with the advice and consent of the Senate. 12 U.S.C. § 1422a(b)(1). Each of the directors, other than the Secretary, serves a term of seven years; initial terms are staggered. *Id.* § 1422a(b)(1)(B), (3). The President designates one of the directors, other than the Secretary, to serve as Chairperson of the Board. *Id.* § 1422a(c)(1).

The FHFB does not receive appropriated monies. Its funds derive primarily from semiannual assessments it imposes on the Federal Home Loan Banks. *Id.* §§ 1422b(c), 1438(b).[3] The FHFB deposits its funds, which it uses to pay the directors' salaries, in the Treasury of the United States. *Id.* § 1422b(c). By law, the directors' "[s]alaries . . . shall not be construed to be Government Funds or appropriated monies, or subject to apportionment for the purposes of chapter 15 of title 31, or any other authority." *Id.* The Department of the Treasury has advised us that it maintains the FHFB's funds in a special deposit account and that it does not commingle them with appropriated monies.[4]

In 1990, during the second session of the 101st Congress, the President nominated four persons to serve as directors of the FHFB: Daniel F. Evans, Jr.; Larry U. Costiglio; William C. Perkins; and Marilyn R. Seymann. The Senate failed to act on any of the nominations during the 101st Congress, and the President subsequently recess appointed the nominees on December 16, 1990. Pursuant to the Recess Appointments Clause, these appointments will expire at the end of the present session of the Senate. U.S. Const. art. II, § 2, cl. 3.[5] Earlier this year, during the current session of the Senate, the President again nominated these persons to serve as directors; at this writing, the Senate has not acted on the nominations.

You ask whether the President may recess appoint these persons as directors if their recess commissions expire before the Senate acts on their nominations.[6] We believe that he may. As we have explained in the past, "there is no bar to granting . . . a second recess appointment [to a position] even though [the person to be recess appointed] is already serving as a recess appointee in that position. It is well-established that the President may make successive recess appointments to the same person." Memorandum for C. Boyden Gray, Counsel to the President, from William P. Barr,

---

[3] By law, the FHFB succeeded to all funds held by the FHLBB in a special deposit account at the Treasury. FIRREA, § 725, 103 Stat. 429 (codified at 12 U.S.C. § 1437 note). These funds do not consist of appropriated monies. Like the FHFB, the FHLBB derived its funds from assessments on the Federal Home Loan Banks. 12 U.S.C. §§ 1438(b), 1439 (1988).

[4] Telephone Interview of John E. Bowman, Assistant General Counsel, Banking and Finance, Office of the General Counsel, Department of the Treasury, by Mark L. Movsesian, Attorney-Advisor, Office of Legal Counsel (Oct. 23, 1991) (*Telephone Interview*).

[5] The Recess Appointments Clause provides that "[t]he President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session."

[6] You have not inquired regarding, and we do not here address, the implications of the "holdover" provision of 12 U.S.C. § 1422a(d)(1).

92

Assistant Attorney General, Office of Legal Counsel at 2 (Nov. 28, 1989). *See Power of President to Fill Vacancies*, 2 Op. Att'y Gen. 525 (1832). Accordingly, the President may grant these four directors successive recess appointments if the Senate fails to act on their nominations by the end of its current session.

You also ask whether these persons may receive their salaries if the President recess appoints them under these circumstances. We believe that they may. The only relevant restriction on the payment of salaries to recess appointees is contained in 5 U.S.C. § 5503(a),[7] which provides:

> Payment for services may not be made from the Treasury of the United States to an individual appointed during a recess of the Senate to fill a vacancy in an existing office, if the vacancy existed while the Senate was in session and was by law required to be filled by and with the advice and consent of the Senate, until the appointee has been confirmed by the Senate.

By express terms, this prohibition does not apply "if, at the end of the session, a nomination for the office, other than the nomination of an individual appointed during the preceding recess of the Senate, was pending before the Senate for its advice and consent." *Id.* § 5503(a)(2).

Although its language is far from clear, section 5503(a) has been interpreted as prohibiting the payment of compensation to successive recess appointees. *See Recess Appointments Issues*, 6 Op. O.L.C. 585, 586 (1982) (relying on opinions of the Comptroller General); *Recess Appointments*, 41 Op. Att'y Gen. 463, 472, 474, 480 (1960) (same analysis under predecessor statute). The legislative history of section 5503(a) supports this interpretation. *See* S. Rep. No. 1079, 76th Cong., 1st Sess. 1 (1939). Nonetheless, we do not believe that section 5503(a) would prohibit the payment of compensation to the directors in this case. Section 5503(a) prohibits only payment "from the Treasury." No such payment is at issue here.

As we discussed above, the directors' salaries do not derive from appropriated funds. *See supra* p. 92. Rather, they derive from non-appropriated funds that the FHFB has deposited in a special Treasury account. The Treasury pays the directors with checks drawn on this account. *Telephone Interview.* It strictly segregates the FHFB's funds from its own "general funds," which it makes available to other agencies. It does not commingle the FHFB's funds with appropriated monies. *Id.*

---

[7] A provision in the annual Treasury, Postal Service, and General Government appropriations bill prohibits the payment of appropriated funds "to any person for the filling of any position for which he or she has been nominated after the Senate has voted not to approve the nomination of said person." Treasury, Postal Service and General Government Appropriations Act, 1992, Pub. L. No. 102-141, § 610, 105 Stat. 834, 869 (1991). This provision will not apply if, as we assume for purposes of this analysis, the Senate merely fails to act on the directors' nominations. In any event, the directors are not paid with appropriated funds. *See infra* p. 93 .

In a 1984 opinion involving the Federal Deposit Insurance Corporation, we concluded that section 5503(a)'s prohibition against payments "from the Treasury" should be construed to apply only to payments from the Treasury's general funds, and not to payments from non-appropriated funds on deposit with the Treasury. *See* Memorandum for Fred F. Fielding, Counsel to the President, from Robert B. Shanks, Deputy Assistant Attorney General, Office of Legal Counsel (Aug. 24, 1984) (section 5503(a) would not prohibit payment of salary, from non-appropriated funds deposited with the Treasury, to recess appointee to the Federal Deposit Insurance Corporation). Relying on standard principles of the law of negotiable instruments, we reasoned that when the Treasury pays checks drawn on a special account maintained with the Treasury, it acts merely as the depositor's agent, and incurs no liability itself. *Id.* at 8. We see no reason to depart from that conclusion in this case. Accordingly, we conclude that when the Treasury pays the FHFB's directors with checks drawn on the FHFB's own account, it does not make payments "from the Treasury" within the meaning of section 5503(a). Consequently, section 5503(a) would not prohibit payment of the salaries in the circumstances you have described.

TIMOTHY E. FLANIGAN
*Acting Assistant Attorney General*
*Office of Legal Counsel*